UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| ALLAN BURNASKA, | : |
| | : Case No._____ |
| Plaintiff, | : |
| vs. | : **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| | : |
| FIBROCELL SCIENCE, INC., DOUGLAS J. SWIRSKY, JULIAN P. KIRK, JOHN MASLOWSKI, MARC B. MAZUR, KELVIN D. MOORE, MARCUS E. SMITH, and CHRISTINE ST.CLARE, | : JURY TRIAL DEMANDED |
| | : |
| Defendants. | : |
| | : |
| Defendants. | : |

---

Plaintiff Allan Burnaska ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

### NATURE AND SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against Fibrocell Science, Inc. ("Fibrocell" or the "Company") and the members of Fibrocell's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Fibrocell will be acquired by Castle Creek Pharmaceutical

Holdings, Inc. ("Castle Creek") and Castle Creek Merger Corp. ("Merger Sub") (the "Proposed Transaction").

2. On September 12, 2019, Fibrocell issued a press release announcing that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") to sell Fibrocell to Castle Creek. Under the terms of the Merger Agreement, each Fibrocell stockholder will receive $3.00 in cash for each share of Fibrocell common stock they own (the "Merger Consideration"), for a total consideration of approximately $63.3 million.

3. On October 28, 2019, Fibrocell filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Fibrocell stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Fibrocell's financial projections, relied upon by the Company's financial advisor, Canaccord Genuity LLC ("Canaccord"), in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Canaccord; and (iii) Company insiders' potential conflicts of interest. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Fibrocell's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Fibrocell's common stock trades on the NASDAQ Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Fibrocell.

9. Defendant Fibrocell is a Delaware corporation, with its principal executive offices located at 405 Eagleview Blvd., Exton, PA 19341. The Company is an autologous cell and gene therapy company focused on translating personalized biologics into medical breakthroughs for diseases affecting the skin and connective tissue. Fibrocell's common stock trades on the NASDAQ Global Select Market under the ticker symbol "FCSC."

10. Defendant Douglas J. Swirsky ("Swirsky") is Chairman of the Board and has been a director of the Company since March 2013.

11. Defendant Julian P. Kirk ("Kirk") has been a director of the Company since October 2012. Defendant Kirk is also the son of Randal J. Kirk who, together with his affiliates, is the Company's largest stockholder owning approximately 21.3% of Fibrocell's outstanding shares. Defendant Kirk is also a Managing Director of Third Security, LLC, which is an affiliate of Randal J. Kirk.

12. Defendant John Maslowski ("Maslowski") is Fibrocell's President and Chief Executive Officer ("CEO") and has been a director of the Company since December 2016.

13. Defendant Marc B. Mazur ("Mazur") has been a director of the Company since 2009.

14. Defendant Kelvin D. Moore ("Moore") has been a director of the Company since March 2018.

15. Defendant Marcus E. Smith ("Smith") has been a director of the Company since October 2012. Defendant Smith is also Third Security, LLC's Senior Managing Director, General Counsel and Chief Compliance Officer.

16. Defendant Christine St.Clare ("St.Clare") has been a director of the Company since February 2013.

17. Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18. Castle Creek is a privately held holding company that holds and invests in companies in the orphan dermatology space. Castle Creek's principal executive offices are located at 233 Mt. Airy Road, 1st Floor, Basking Ridge, NJ, 07920.

19. Merger Sub is a Delaware corporation and wholly-owned subsidiary of Castle Creek.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20.     Fibrocell is an autologous cell and gene therapy company. Fibrocell focuses on discovering and developing therapies for diseases affecting the skin and connective tissues in the United States. The Company's gene therapy product candidates include (i) FCX-007, which is in Phase I/II clinical trials to treat recessive dystrophic epidermolysis bullosa; (ii) FCX-013, a gene therapy for localized scleroderma; and (iii) gene-therapy program that is in research phase to arthritis and related conditions. Fibrocell has a collaboration agreement with Intrexon Corporation for the development of FCX-007, FCX-013, and products for the treatment of chronic inflammation and degenerative diseases of human joints.

21.     On April 15, 2019, Fibrocell announced it had entered into a collaboration agreement with Castle Creek Pharmaceuticals, LLC, a wholly-owned subsidiary of Castle Creek, to develop and commercialize the Company's FCX-007 gene therapy. The press release stated, in pertinent part:

> EXTON, Pa., April 15, 2019 -- Fibrocell Science, Inc. (Nasdaq: FCSC), a cell and gene therapy company focused on transformational autologous cell-based therapies for skin and connective tissue diseases, today announced the completion of a collaboration agreement with Castle Creek Pharmaceuticals to develop and commercialize Fibrocell's lead gene therapy candidate, FCX-007, for the treatment of recessive dystrophic epidermolysis bullosa (RDEB), a rare, life-threatening genetic disorder diagnosed at infancy with no cure or treatment approved by the U.S. Food and Drug Administration (FDA).
>
> "We are proud to partner with Castle Creek Pharmaceuticals, a company recognized for its innovation in drug development for rare skin diseases and its commitment to the epidermolysis bullosa community. This agreement provides resources and non-dilutive capital to continue the development and, if approved, commercialize FCX-007, a potentially transformative treatment for RDEB patients," said John Maslowski, President and Chief Executive Officer of Fibrocell. "With Castle Creek Pharmaceuticals providing funding for the development of FCX-007, Fibrocell can allocate additional resources to advance clinical development of FCX-013 for the treatment of moderate to severe localized scleroderma."

Under the terms of the collaboration agreement, Castle Creek Pharmaceuticals will receive an exclusive license to commercialize FCX-007 in the United States. Castle Creek Pharmaceuticals will be responsible for all development and manufacturing expenses up to $20 million prior to the initial Biologics License Application (BLA) filing with the FDA. If development spending exceeds $20 million, Castle Creek Pharmaceuticals will be responsible for 70% of the excess costs and Fibrocell will cover 30% of these additional expenses. Castle Creek Pharmaceuticals will also be responsible for all commercialization activities for FCX-007. Fibrocell will maintain responsibility for clinical development, regulatory interactions, and manufacturing of the product under a future supply agreement with Castle Creek Pharmaceuticals.

Fibrocell will receive an upfront payment of $7.5 million, $2.5 million for the first patient enrolled in the Phase 3 clinical trial and $30 million upon BLA approval and commercial readiness. Fibrocell is also eligible to receive up to $75 million in sales milestones, consisting of $25 million when FCX-007 achieves $250 million in cumulative net sales and an additional $50 million upon attaining $750 million in cumulative net sales. In addition, Castle Creek Pharmaceuticals will pay Fibrocell a 30% share of the gross profits from FCX-007 sales.

Fibrocell will retain sole ownership of the Rare Pediatric Disease Priority Review Voucher (PRV), which may be granted upon market approval of FCX-007. The PRV can be used to obtain priority review for a subsequent New Drug Application or BLA, and can be sold to another entity.

"We believe our collaboration with Fibrocell is synergistic and serves both of our long-term objectives well. It increases the breadth of Castle Creek's potential epidermolysis bullosa therapies by combining our clinical trial evaluating our investigational topical therapy (CCP-020) for epidermolysis bullosa simplex (EBS) with Fibrocell's gene therapy to potentially treat RDEB," said Greg Wujek, Chief Executive Officer of Castle Creek Pharmaceuticals. "Castle Creek values the contributions of the Fibrocell team in progressing development of FCX-007, and we are excited to work with them to continue advancing this novel EB therapy that offers the potential to bring relief to patients suffering from this chronic, painful and debilitating disease."

22. On August 14, 2019, Fibrocell announced its second quarter 2019 financial results, reporting diluted net income of $0.78 per share, compared to diluted net loss of $1.03 per share during the second quarter of 2018. Defendant Maslowski commented on the quarter, stating, "Our dedicated team has continued to make progress during the second quarter of 2019 by achieving key milestones that, we believe, will serve as catalysts for advancing our gene therapy clinical

programs for rare genetic conditions of the skin and connective tissue . . . ." In the press release, the Company presented the following highlights for the quarter:

### FCX-007

- Fibrocell announced in May 2019 that the U.S. Food and Drug Administration (FDA) granted the Regenerative Medicine Advanced Therapy (RMAT) designation to FCX-007 for the treatment of recessive dystrophic epidermolysis bullosa (RDEB). The RMAT designation augments the Orphan Drug, Rare Pediatric Disease and Fast Track designations previously granted to FCX-007 by the FDA.

- Based on guidance from a Type C meeting and a Type B end-of-Phase 2 meeting with the FDA on the design of a proposed Phase 3 clinical trial of FCX-007, Fibrocell updated the Chemistry, Manufacturing and Controls (CMC) information filed to the Investigational New Drug (IND) application for FCX-007 in early July 2019. Fibrocell's Phase 3 clinical trial, named DEFI-RDEB (*dermal fibroblasts*-**RDEB**), is designed as an open label, multi-centered, intra-patient controlled trial expected to enroll 15-20 patients.

- In late July 2019, Fibrocell initiated the Phase 3 clinical trial of FCX-007. Fibrocell projects enrollment and dosing of Phase 3 patients will be completed in the third quarter of 2020, and data collection for the primary endpoint will be completed in the fourth quarter of 2020. The Phase 3 trial's primary outcome measure is the comparison of the proportion of FCX-007 treated and untreated matched wounds with complete wound closure at week 12. If the Phase 3 clinical trial is successful and completed within the projected timeframe, Fibrocell expects to file a Biologics License Agreement (BLA) for FCX-007 in 2021.

### FCX-013

- Fibrocell is currently enrolling the Phase 1 portion of a Phase 1/2 clinical trial for FCX-013 for the treatment of moderate to severe localized scleroderma and expects to complete enrollment of Phase 1 adult patients in the third quarter of 2019. The Company projects that safety and efficacy data for the adult patients will be available in mid-2020.

**The Proposed Transaction**

23.     On September 12, 2019, Fibrocell issued a press release announcing the Proposed Transaction. The press release states, in relevant part:

EXTON, Pa., Sept. 12, 2019 -- Fibrocell Science, Inc. (Nasdaq: FCSC), a cell and gene therapy company focused on transformational autologous cell-based therapies for skin and connective tissue diseases, today announced it has reached an agreement to be acquired by Castle Creek Pharmaceutical Holdings, Inc. ("Castle Creek Pharmaceutical Holdings"), the parent company of Castle Creek Pharmaceuticals, LLC "Castle Creek Pharmaceuticals").

Castle Creek Pharmaceutical Holdings will acquire Fibrocell for a total consideration of approximately $63.3 million, including repayment of debt and other financial instruments, in cash. Fibrocell common stockholders will receive all-cash consideration of $3.00 per share. This offer represents a 63% premium to Fibrocell's 30-day volume weighted average price as of September 11, 2019. The transaction was approved by the Boards of Directors of both companies and is expected to close in the fourth quarter of 2019.

"Following our licensing agreement to develop and commercialize FCX-007, our experience working together on rare dermatological conditions caused us to quickly realize that Castle Creek and Fibrocell could achieve even greater synergies by combining the companies into one," said Greg Wujek, CEO of Castle Creek Pharmaceuticals. "With Castle Creek's resources, Fibrocell's gene therapy platform can be advanced into additional areas of high, unmet need – with the potential to develop multiple promising new therapies."

"We are incredibly pleased to announce this transaction, which we believe is in the best interests of both shareholders and patients," said John Maslowski, President and Chief Executive Officer of Fibrocell. "We believe that combining with Castle Creek has a strong strategic rationale, as they have the expertise and resources necessary to continue the development of both FCX-007 and FCX-013, potentially bringing these and additional novel products to patients in need."

Fibrocell's portfolio includes FCX-007, an investigational, late-stage stage gene therapy product candidate for the treatment of recessive dystrophic epidermolysis bullosa (RDEB), a congenital and progressive orphan skin disease caused by the deficiency of the protein COL7. FCX-007 is a genetically-modified autologous fibroblast that encodes the gene for COL7. By genetically modifying autologous fibroblasts ex vivo to produce COL7, culturing them and then treating wounds locally via injection, FCX-007 offers the potential to address the underlying cause of the disease by providing high levels of COL7 directly to the affected areas while avoiding systemic distribution. A Phase 3 trial was initiated recently, and if successful, a Biologics License Application (BLA) filing is expected in 2021.

The portfolio also includes FCX-013, an investigational, gene therapy candidate for the treatment of moderate to severe localized scleroderma. FCX-013 is an autologous fibroblast genetically modified using lentivirus and encoded for matrix metalloproteinase 1 (MMP-1), a protein responsible for breaking down collagen. FCX-013 is currently enrolling for the Phase 1 portion of a Phase 1/2 clinical trial.

These product candidates will augment Castle Creek Pharmaceuticals' CCP-020, an investigational, late-stage topical ointment under development for the treatment of epidermolysis bullosa simplex.

Under the terms of the agreement and plan of merger, Castle Creek Pharmaceutical Holdings will purchase all outstanding shares of Fibrocell common stock for $3.00 per share and provide repayment of outstanding debt, preferred shares and warrants as defined by their individual agreements.

The closing of the acquisition is subject to customary closing conditions, including Fibrocell stockholder approval. Upon completion of the transaction, Fibrocell will become a privately held subsidiary of Castle Creek Pharmaceutical Holdings.

Fibrocell's employees will continue as employees of the combined company on completion of the transaction. Until that time, Fibrocell will continue to operate as a separate and independent company.

**Insiders' Interests in the Proposed Transaction**

24. Fibrocell insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Fibrocell.

25. Notably, Fibrocell insiders stand to reap substantial financial benefits for securing the deal with Castle Creek. Pursuant to the Merger Agreement, all outstanding stock options will vest and convert into the right to receive cash payments. The following table summarizes the value of the stock options Company insiders stand to receive:

|  | Name | Number of Options(1) (#) | Total Option Consideration(2) ($) |
|---|---|---|---|
| **Non-Employee Directors:** | Kelvin D. Moore | 18,000 | 16,560 |
|  | Marc B. Mazur | 18,000 | 16,560 |
|  | Marcus E. Smith | 18,000 | 16,560 |
|  | Julian P. Kirk | 18,000 | 16,560 |
|  | Christine St.Clare | 18,000 | 16,560 |
|  | Douglas J. Swirsky | 18,000 | 16,560 |
| **Executive Officers:** | John M. Maslowski | 100,000 | 122,000 |
|  | Sean D. Buckley | 45,000 | 54,300 |

26. Moreover, if they are terminated in connection with the Proposed Transaction, Fibrocell's named executive officers stand to receive substantial cash severance payments as set

forth in the following table:

**Golden Parachute Compensation**

| Name | Cash(1) ($) | Equity(2) ($) | Perquisites / Benefits(3) ($) | Total(4) ($) |
|---|---|---|---|---|
| **John M. Maslowski** <br> President and Chief Executive Officer | 991,182 | 122,000 | 35,970 | 1,149,152 |
| **Sean D. Buckley** <br> Chief Financial Officer and Corporate Secretary | 380,103 | 54,300 | 23,646 | 458,049 |

**The Proxy Statement Contains Material Misstatements or Omissions**

27.     Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Fibrocell's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

28.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Fibrocell's financial projections, relied upon by the Company's financial advisor, Canaccord, in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Canaccord; and (iii) Company insiders' potential conflicts of interest.

*Material Omissions Concerning Fibrocell's Financial Projections*

29.     The Proxy Statement omits material information regarding the Company's financial projections provided by Fibrocell's management and relied upon by Canaccord for its analyses.

30.     For example, in connection with Canaccord's *Discounted Cash Flow Analysis* *("DCF")*, the Proxy Statement sets forth:

> Canaccord Genuity conducted a discounted cash flow analysis for each of FCX-007 and FCX-013 for the purpose of calculating a range of equity values per share of Common Stock on a stand-alone basis. . . . For purposes of this analysis, Canaccord Genuity utilized financial projections provided by Fibrocell

> management to determine the unlevered free cash flows for FCX-007 and FCX-013 for calendar years 2019 through 2028. These financial projections were adjusted based on probability of occurrence assumptions provided by Fibrocell management. See the section of this proxy statement entitled "—Certain Unaudited Prospective Financial Information." For each of FCX-007 and FCX-013, unlevered free cash flows were calculated by taking net income, adding back depreciation, subtracting capital expenditures, and adjusting for changes in working capital.

Proxy Statement at 55. The Proxy Statement, however, fails to set forth the unlevered free cash flows ("UFCFs") for FCX-007 and FCX-013 that Fibrocell is projected to generate for calendar years 2019 through 2028 utilized by Canaccord in its DCF. Although the Proxy Statement discloses certain line items utilized to calculate UFCF for years 2019 through 2023, the Proxy Statement fails to disclose all necessary line items, including (i) capital expenditures and (ii) changes in working capital. The Proxy Statement further fails to disclose any of the projections underlying UFCF for years 2024 through 2028, including (i) net income; (ii) depreciation; (iii) capital expenditures; and (iv) changes in working capital.

31. The omission of this information renders the statements in the "Certain Unaudited Prospective Financial Information" and "Opinion of Fibrocell's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Canaccord's Financial Analyses***

32. The Proxy Statement describes Canaccord's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Canaccord's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Fibrocell's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Canaccord's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

33. With respect to Canaccord's *DCF*, in addition to the UFCFs for calendar years 2019 through 2028, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rates ranging from 25.6% to 27.6%.; (ii) the estimated terminal values for Fibrocell; and (iii) the implied terminal multiples resulting from the analysis.

34. With respect to Canaccord's *Selected Companies Analysis* and *Selected Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies and transactions analyzed by Canaccord, respectively.

35. With respect to the *Other Information* observed by Canaccord, the Proxy Statement discloses that Canaccord observed the "premiums paid in 177 biopharmaceutical transactions with total transaction value greater than $10 million in the past five years based on information from the CapitalIQ database as of September 10, 2019." *Id.* at 56. The Proxy Statement fails, however, to disclose the low and high premiums observed.

36. Without such undisclosed information, Fibrocell stockholders cannot evaluate for themselves whether the financial analyses performed by Canaccord were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Canaccord's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

37. The omission of this information renders the statements in the "Opinion of Fibrocell's Financial Advisor" and "Certain Unaudited Prospective Financial Information" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Company Insiders' Potential Conflicts of Interest*

38. The Proxy Statement fails to disclose material information concerning the conflicts of interest faced by Fibrocell insiders.

39. According to the September 12, 2019 press release announcing the Proposed Transaction, "Fibrocell's employees will continue as employees of the combined company on completion of the transaction. Until that time, Fibrocell will continue to operate as a separate and independent company."

40. Yet, the Proxy Statement fails to disclose whether any members of Fibrocell management are continuing with the combined company, and the details of any employment and retention-related discussions and negotiations that occurred between Castle Creek and Fibrocell executive officers, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of Castle Creek's prior proposals or indications of interest mentioned management retention or equity participation in the combined company.

41. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42. The omission of this information renders the statements in the "Background of the Merger" and "Interests of Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

43. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and Fibrocell's public stockholders will be unable to make a sufficiently informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

44. Plaintiff repeats all previous allegations as if set forth in full.

45. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

46. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the financial projections utilized by the Company's financial advisor in connection with its financial analyses, the financial analyses performed by the Company's financial advisor, and potential conflicts of interest faced by Company insiders. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

48. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

49. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

50. Plaintiff repeats all previous allegations as if set forth in full.

51. The Individual Defendants acted as controlling persons of Fibrocell within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Fibrocell, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

54. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Fibrocell's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Fibrocell, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed

    Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Fibrocell stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 11, 2019

WEISSLAW LLP

By _____
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**BRAGAR EAGEL & SQUIRE, P.C.**
Alexandra B. Raymond
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (646) 860-9158
Fax: (212) 214-0506
Email: raymond@bespc.com

*Attorneys for Plaintiff*